**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IRFANSYAH RIYANTO, Personal Representative of the Heirs of TONI ISMAIL, deceased, RAHMAWATI, deceased, and ATHAR RISKI RIAWAN, deceased, | **)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)** | |
| Plaintiff, | **)**<br>**)** | No. 21-cv-01475 |
| v. | **)**<br>**)** | Judge Robert M. Dow, Jr. |
| THE BOEING COMPANY, a corporation, | **)**<br>**)** | |
| Defendant. | **)**<br>**)**<br>**)** | |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO REMAND**

Plaintiff submits this Reply Memorandum in further support of his motion to remand.

**THERE IS NO ADMIRALTY JURISDICTION UNDER *EXECUTIVE JET***

The Supreme Court's decision in *Executive Jet* provides the test for determining whether there is admiralty jurisdiction for this aviation claim. In *Executive Jet,* the Supreme Court held that the mere fact a wrong occurs on or over navigable water "is not of itself sufficient to turn an airplane negligence case into a 'maritime tort." 409 U.S. at 268. Rather, a party claiming admiralty jurisdiction must prove, in addition to locality, that "the wrong bear a significant relationship to traditional maritime activity" and that *"unless such a relationship exists, claims arising from airplane accidents are not cognizable in admiralty…" Id.* at 270-71 (emphasis added). The Supreme Court in *Executive Jet* held that there is no significant relationship between an event occurring to a land-based aircraft on a domestic flight and traditional maritime activity and, thus,

there is no admiralty jurisdiction for aviation tort claims arising from domestic flights. *Id.* at 273-74.

*Executive Jet* remains the controlling case on admiralty jurisdiction. It has never been overruled, questioned, or criticized; it has been reaffirmed in three subsequent Supreme Court decisions, *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982) ("the Court acknowledges [*Executive Jet*] to be a key authority"), *Sisson v. Ruby,* 497 U.S. 358, 364 (1990) ("In *Executive Jet*…the relevant activity was not a plane sinking in Lake Erie, but air travel generally"), and *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 540 (1995) ("flying an airplane over the water…the relationship is too attenuated"); and courts have followed it in holding that there is no admiralty jurisdiction over claims arising from domestic flights, *Teachey v. United States,* 363 F. Supp. 1197 (M.D. Fla. 1973) (flight between Key West, FL and St. Petersburg, FL); *American Home Assur. Co. v. United States,* 389 F. Supp. 657 (M.D. Pa. 1975) (flight between New Jersey and Block Island, NY).

It is undisputed that this action arises from the crash of a land-based aircraft on a domestic flight. This fact should decide this jurisdiction issue and require remand. There is no good reason for departing from *Executive Jet* by drawing a distinction between a domestic flight in the U.S., as in *Executive Jet,* and the domestic flight in Indonesia in this case.

**Supreme Court In *Executive Jet* Intended To Limit Expansion Of Admiralty Jurisdiction**

Defendant misquotes the Supreme Court and misstates the basis for its decision in *Executive Jet.* Defendant states "the Supreme Court found the connection to maritime activity was remote because, before air travel, the planned journey from Cleveland to Maine would have been

'almost entirely over land.'" (Doc. #18, p. 9) [1] The Supreme Court made no such statement concerning the nature of travel over that route before air travel and that was not the basis for its decision. Rather, the Court, *referring to the accident flight,* stated the "*flight* …would have been almost entirely over land." 409 U.S. at 272 (emphasis added). Moreover, the intent of the Supreme Court's decision in *Executive Jet* was to limit the expansion of admiralty jurisdiction over aviation tort claims.

The Supreme Court in *Executive Jet* held that the traditional locality test worked well enough when applied to claims involving waterborne vessels, but difficulties arose when courts sought to apply it to claims of other types, *id.* at 254, particularly aviation claims, *id.* at 261. The Supreme Court held:

> the plane's unexpected descent will almost invariably have been attributable to a cause unrelated to the sea—be it pilot error, defective design or manufacture of airframe or engine, error of a traffic controller at the airport, or some other cause…

*Id.* at 270. Yet under solely a locality test, there would be an impermissible expansion of admiralty jurisdiction over aviation claims attributable to causes unrelated to the sea.

The Supreme Court therefore added a "connection" or "nexus" test to the existing locality test. In a decision relied upon by defendant, *Hammill v. Olympic Airways, S.A.,* 398 F. Supp. 829 (D.D.C. 1975), the Court explained that "*Executive Jet* represents an effort by the Supreme Court to limit the extension of admiralty jurisdiction to such airplane tort cases as those arising out of occurrences occurring on or over navigable waters within state territorial limits, where such aircraft are not, for example, in transoceanic flights." *Id.* at 833. In fact, the Supreme Court, in *Executive Jet,* held that "*unless such a relationship [to traditional maritime activity] exists,* claims arising from airplane accidents are not cognizable in admiralty…" *Id.* at 270-71 (emphasis added).

---

[1] Actually, a large part of the travel from Ohio to Maine in *Executive Jet* would have been by boat, over the Great Lakes and St. Lawrence River, at least before the introduction of the automobile.

The Court thereby effectively created a presumption *against* admiralty jurisdiction over aviation tort claims.

The Supreme Court in *Grubart,* characterized the domestic flight in *Executive Jet* as "an activity *far removed* from anything traditionally maritime." 513 U.S. at 542 (emphasis added) Similarly, in *Tagliere v. Harrah's Illinois Corp.,* 445 F.3d 1012,1014 (7th Cir. 2006) (emphasis added), the Seventh Circuit stated that "the main practical use of the 'connection' [significant relationship] test has been to expel from the admiralty jurisdiction *freak* cases," citing one such case as the crash of the domestic flight in *Executive Jet.*

**The Cases Relied Upon By Defendant Involve International Or Transoceanic Flights**

The Supreme Court in *Executive Jet* stated that "we need not decide today whether an aviation tort can *ever, under any circumstances* bear a sufficient relationship to traditional maritime activity to come within admiralty jurisdiction…" and stated that an international, transoceanic flight "*might be* thought to bear a significant relationship to traditional maritime activity…" 409 U.S. at 271 (emphasis added). The Supreme Court cited as an example "a plane flying from New York to London [which] crashed in the mid-Atlantic." *Id.* Courts have used this qualification to find admiralty jurisdiction in aviation tort claims, but only where the flight involved international and/or transoceanic flights. *Hammill,* 398 F. Supp. 829. These include almost all of the cases relied upon by defendant. *See, e.g., Miller v. U.S.,* 725 F.2d 1311 (11th Cir. 1984) (international, transoceanic flight from the Bahamas to Florida); *Roberts v. U.S.,* 498 F.2d 520 (9th Cir. 1974) (international, transoceanic flight from California to Vietnam); *Mancuso v. Kimex, Inc.,* 484 F. Supp. 453 (S.D. Fla. 1980) (international flight from Jamaica to Florida); *Williams v. U.S.,* 711 F.2d 893 (9th Cir. 1983) (transoceanic flight from California to Hawaii).[2]

---

[2] The other cases relied upon by defendant, *Preston v. Frantz,* 11 F.3d 357 (2d Cir. 1993) (flight from Connecticut to Nantucket Island); *Isla Nena Air Services, Inc., v. Cessna Aircraft, Inc.,* 380 F. Supp. 2d 74

Defendant also refers repeatedly to the Supreme Court's decision in *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207 (1986), but misstates the Court's holding in that case. In *Offshore Logistics,* the Court considered whether plaintiffs could recover wrongful death damages under Louisiana law or were limited to those damages recoverable under DOHSA.[3] The Supreme Court in *Offshore Logistics* certainly did not find that the accident flight in that case "fell squarely within admiralty jurisdiction." (Doc. #18. p. 9) Admiralty jurisdiction was not even an issue in that case.[4] Rather, the Court held only that DOHSA applied and provided the measure of damages.[5] Further, the accident in *Offshore Logistics* arose from a helicopter flight over international waters, not a domestic flight, as in this case.[6]

**The Wrong Here Did Not Occur Over Navigable Waters**

A party claiming admiralty jurisdiction still must meet the locality test by proving that the alleged wrong occurred over or on navigable waters. *Executive Jet,* 409 U.S. at 268. In *Executive Jet,* the Supreme Court held that "under the locality test, the tort 'occurs' where the alleged negligence took effect." *Id.* at 266. The Supreme Court in *Executive Jet* did not decide where the negligence took effect in that case (where the aircraft struck a flock of seagulls on the runway and

---

(D.P.R. 2005) (flight from offshore island to mainland Puerto Rica); and *Hammill,* 398 F. Supp. 829 (flight from Corfu to Athens) all involved flights between the mainland and an off-shore island. In this case, Indonesia is unique in that it is comprised entirely of islands. There is no mainland and all flights within Indonesia's islands are domestic.

[3] Defendant states in its Opposition that removal also may be based upon DOHSA. Defendant did not allege this as a basis for removal in its Notice of Removal and it is improper for defendant to raise that argument at this time. In any event, claims under DOHSA are not removable. *Argandona v. Lloyd's Registry of Shipping,* 804 F. Supp. 326 (S.D. Fla. 1992).

[4] The distinction between DOHSA and general admiralty jurisdiction is important as jurisdiction under DOHSA is based solely on the location of the crash, *i.e.*, accidental death occurring beyond a marine league from shore. 46 U.S.C. § 761.

[5] Any statement by the Court in *Offshore Logistics* concerning admiralty jurisdiction is *dicta.*

[6] The other helicopter flight cases cited by defendant (Doc. #18, p. 9 n.5) fail to support its argument for admiralty jurisdiction over the domestic flight in this case for the same reason. These were not domestic flights, but were all flights over international waters between oil drilling rigs in international waters and the mainland U.S. and, further, two of these helicopter cases cited by defendant, *Garrett* and *Williamson,* involved jurisdiction under DOHSA, not general admiralty jurisdiction.

subsequently crashed into Lake Erie). However, both lower courts in *Executive Jet* held that the "wrong" was the failure to keep the runway free of birds and the failure to warn the pilots of their presence—not the subsequent crash into the lake. The District Court held that "the alleged negligence became operative upon the aircraft while it was over the land…From this point on the plane was disabled and was caused to fall." *Id.* at 252; The Sixth Circuit affirmed, holding that "the alleged tort in this case occurred on land before the aircraft reached Lake Erie…" *Executive Jet Aviation, Inc. v. City of Cleveland,* 448 F.2d 151, 154 (6th Cir. 1971).

*Grubart* provides further support for the rule that the "wrong," or the place where the "negligence took effect," is the place where the wrongful conduct causing the accident occurred, even though the injury may occur subsequent thereto. *Grubart* involved flooding damage to downtown Chicago buildings caused by a crane on a barge on the Chicago River driving piles and weakening the freight tunnel below the riverbed serving the buildings. The Supreme Court held that the locality test was satisfied because the tort was committed on the river, 513 U.S. at 534— even though the damage occurred on land seven months later. *Id.* at 530. The "wrong" in *Grubart* which caused the damage therefore occurred at the time the crane negligently drove the pilings into the river and through the "roof" of the underlying tunnel. The "negligence took effect" at that time, even though the damage actually occurred much later.

In *Lu Junhong v. Boeing Co.,* 792 F.3d 805, 813–17 (7th Cir. 2015), the Seventh Circuit found that under plaintiffs' theory the conduct causing the crash occurred when the autothrottle disengaged over the ocean and therefore there was admiralty jurisdiction, even though the aircraft subsequently crashed on land where the plaintiffs sustained injuries. The decisions of the Supreme Court in *Grubart* and the Seventh Circuit in *Lu Junhong*, following *Executive Jet* and supported

by the Sixth Circuit in *Executive Jet,* are controlling.[7] The wrong, *i.e.*, the negligent conduct causing the injury, must take effect on or over navigable water for there to be admiralty jurisdiction.

Defendant argues that the tort occurred in this case when the aircraft crashed into water, injuries occurred at that time and the tort was completed because under *Lu Junhong,* "there's no tort without injury." (Doc. #18, p. 4, *quoting Lu Junhong,* 792 F.3d at 816.) However, the aircraft in *Lu Junhong* crashed on *land* and the injuries occurred on *land,* yet the Court found admiralty jurisdiction. The Court in *Lu Junhong* did not hold, as defendant claims, that admiralty jurisdiction is not limited to cases involving injuries that occur on the water. Defendant also relies upon *Curry v. Boeing,* 2021 WL 1088325 (March 22, 2021, N.D. Ill), for the argument that the wrong may be *either* the place of wrongful conduct or place of injury. However, *Curry* cited only two decisions in support of its holding, *Williams,* 711 F.2d 893, and *Miller,* 725 F.2d 1311, neither of which is applicable.[8]  In any event, in *Curry,* the place where the negligence took effect, when the contaminated bleed air was released into the passenger cabin, and the place where the injuries to the plaintiffs occurred were both over the ocean.

In this case, the negligence took effect while the aircraft was over land. Plaintiffs allege that an autothrottle failure occurred in the accident aircraft within minutes after the aircraft departed the runway and while the aircraft was over land. Due to the divergent thrust being provided to the engines, the aircraft was caused to go into an upset from which the flight crew was unable to recover and it went out of control and violently crashed. (Doc. #15-3) These allegations

---

[7] Defendant cites to two other Ninth Circuit cases, *Taghadomi v. U.S.,* 401 F.3d 1080 (9th Cir. 2005), and *Roberts,* 498 F.2d 520, but the Ninth Circuit follows a place of injury rule to determining the place of wrong which the 7th Circuit declined to follow in *Lu Junhong,* 792 F.3d 805.

[8] *Williams* is a Ninth Circuit case, while *Miller* was decided under DOHSA, not generality admiralty jurisdiction. Under the specific language in DOHSA, jurisdiction is based upon an accident on or over water.

7

must be taken as true for purposes of this motion, *Dart Cherokee Basin Operating, LLC, v. Owens,* 574 U.S. 81 (2014); *Brown v. Porter,* 149 F. Supp. 3d 963 (N.D. Ill. 2016). These allegations also are supported by the Preliminary Accident Report (Doc. #15-1) The Report states the autopilot became engaged at 7:36:51. Defendant admits the Report further states that two minutes later at 7:38:42 the thrust levels started becoming asymmetric (Doc. #18; p. 6, Doc. #15-1, p. 1). According to the Report, the aircraft was likely still over land at that time. (Doc. 15-1, Fig. 2)[9]

The burden of proof on this motion rests squarely with defendant Boeing as the party seeking federal jurisdiction through removal of this action, *Doe v. Allied Signal, Inc.,* 985 F.2d 908 (7th Cir. 1993), and all doubts are to resolved in plaintiff's favor, *Jones v. Gen. Tire & Rubber Co.,* 541 F.2d 660 (7th Cir. 1976).

**No Possibility Of A Potential Disruptive Impact On Maritime Commerce**

The Supreme Court in *Foremost,* 457 U.S. 668, and *Sisson,* 497 U.S. 358, added a second part to *Executive Jet's* connection test—the party seeking admiralty jurisdiction also must prove that the subject occurrence presented at least a possibility of a potential disruptive impact on maritime commerce. Defendant fails to meet that burden of proof here. This aircraft crashed within one mile of Lancang Island, an island less than 1 mile long and 1/3 of a mile wide with 2,100 residents, one road and no cars. (Doc. #15-4) There is no ferry service to or from the island and absolutely no maritime commerce to present even the possibility of potential disruption.

Defendant does not even dispute this point. Instead, it contends that a potentially disruptive impact exists because of the possibility of injury to passengers and crew. However, this aircraft

---

[9] The fact that the asymmetric throttle condition continued when the aircraft traveled over water before ultimately crashing does not change the fact that the negligence became effective over land. A new wrong did not occur over the water. The onset of the asymmetric thrust levels over land made the aircraft uncontrollable and caused the crash.

plummeted into the water from a high altitude and all those on board were killed. There were no injuries, nor even the possibility of injuries, to passengers, which might cause an unintended stop or diversion of the flight to provide medical care, as the Court found in *Curry,* 2021 WL 1088325,[10] or to crew, which might affect the operation of the flight, like the riverboat casino employee injured in *Weaver v. Hollywood Casino-Aurora, Inc.,* 255 F.3d 379 (7th Cir. 2001). Remand is required for this additional reason that defendant does not meet its burden of proving the possibility of a potential disruptive impact on maritime commerce.

### THIS ACTION WAS IMPROPERLY REMOVED TO THIS COURT

Plaintiff has presented several reasons why there is no admiralty jurisdiction over this action. However, the Court does not need to even decide this issue because this action was improperly removed on the basis of admiralty and diversity of citizenship and it must be remanded for this reason. Even if there is admiralty jurisdiction over plaintiff's claims, defendant was precluded under the "saving-to-suitors" clause of the admiralty statute from removing this action as an admiralty claim, 28 U.S.C. § 1333(1), while defendant was barred from removing this action under the diversity statue, 28 U.S.C. § 1332, by the forum defendant rule, 28 U.S.C. §1441.

Federal courts only have concurrent jurisdiction with the states in admiralty actions *in personam* pursuant to the "saving to suitors" clause. *Madruga v. Superior Court,* 346 U.S. 556, 560-61 (1954). In *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 378-80 (1959), the Supreme Court held that admiralty cases are not cases arising under the Constitution or laws of the United States; there is no federal question jurisdiction over admiralty cases under 28 U.S.C. §

---

[10] Defendant also cites *Tagliere v. Harrah's Ill. Corp.,* 445 F.3d 1012 (7th Cir. 2006), a case involving a patron of a riverboat casino falling from a stool. Aside from the obvious fact that this case involved an injury, possibly requiring medical care, this case was decided under the Extension of Admiralty Jurisdiction Act, rather than general maritime law, where jurisdiction exists as to any case arising from an "injury to a person caused by a vessel on navigable water."

1331; and admiralty cases may not be removed. *See also Brown,* 149 F. Supp. 3d 963. A finding by this Court that there is admiralty jurisdiction over plaintiff's claims only means plaintiff could have brought this action in federal court—if he had chosen to do so. Defendant was barred from taking that choice away from plaintiff through its improper removal. *Speranza v. Leonard,* 925 F. Supp. 2d 266, 270 (D. Conn. 2013) ("The savings clause…prevents a defendant from removing a maritime action seeking a state law remedy even if the plaintiff could have brought the action in federal court under admiralty jurisdiction.").

Defendant argues that the bar to removal of admiralty claims under the saving-to-suitors clause was removed by a 2011 amendment to the removal statute. However, that argument has been rejected by the majority of courts considering the issue. *See Langlois v. Kirby Inland Marine, LLP,* 139 F. Supp. 3d 804 (M.D. La. 2015) (Court collected over 40 cases rejecting defendant's argument here.) Specifically, in *Brown,* 149 F. Supp. 3d at 970, a court in this district held that "the amendment to §1441(b) [the diversity removal statute] did not disturb the settled principle that §1331(1)'s saving-to-suitors clause allows a plaintiff to forestall removal where the only basis for federal jurisdiction is the admiralty jurisdiction." *See also Forde v. Hornblower New York, LLC,* 243 F. Supp. 3d 461, 466-67 (S.D. N.Y. 2017) ("If the court were to accept defendant's argument that jurisdiction exists in this case, it would mean that all admiralty cases are freely removable. Such a rule would directly contradict the saving-to-suitors clause, as interpreted by the Supreme Court in *Romero…*").

The reason why the amendment to the removal statute had no effect on the non-removability of admiralty claims is that the non-removability of admiralty claims is not based upon the removal statute, but upon the admiralty statute itself. *Boakye v. NCL (Bahamas) Ltd.,* 295 F. Supp. 3d 1342, 1347 (N.D. Ga. 2018) (The "foundational barrier" to removal of admiralty claims

10

is the "saving to suitors clause, which is an integral part of the very statute granting federal courts original jurisdiction over admiralty claims in the first place."); *Int'l Marine v. Southern Drydock, Inc.,* 2016 WL 11431679 (M.D. Fla. 2016) at \*3 ("§1441 was not the basis for denying removal of *in personam* claims…This is because it was made clear that there is no jurisdiction in this court, based solely on §1333 [the admiralty statute] of *in personam* claims seeking common law remedies.").

Courts considering this issue have found that the legislative history of the amendment to the removal statute indicates "Congress's intention was procedural, not substantive:…'[to place] the provisions that apply to diversity actions under one subsection'" so as to "'make it easier for litigants to locate the provisions that apply uniquely to diversity removal.'" *Nassau County Bridge Authority v. Olsen,* 130 F. Supp. 3d 753, 763 (E.D. N.Y. 2015), *quoting* H.R. Rep. No. 112-10; *Atl. Coast Marine Group, Inc. v. Willis,* 210 F. Supp. 3d 807, 811 (E.D. N.C. 2016) ("the legislative record discloses that Congress amended § 1441 to increase clarity, not to expand federal courts' removal jurisdiction in maritime matters.").

Since the removal of admiralty claims absolutely is precluded by the saving-to-suitors clause of the admiralty statute and the Supreme Court's decision in *Romero,* 358 U.S. 354*,* defendant resorts to the creative, but "misguided," argument that: (1) removal under alleged admiralty law was proper because there is another independent basis for jurisdiction, diversity of citizenship, and (2) removal under the diversity statute was not barred by the forum defendant rule because there is another basis for jurisdiction, namely admiralty. Defendant therefore takes two bases for removal, neither of which provides a basis for removal standing alone, and argues that when they are placed together, a basis for removal is created.

11

First, as to defendant's argument that the removal of plaintiff's alleged admiralty claims is saved by diversity jurisdiction, plaintiff's admiralty claims are not properly before this Court in the first instance. Defendant may not improperly remove a non-removable admiralty claim (even assuming there is admiralty jurisdiction) and then contend that claim is saved by diversity jurisdiction. A court has a "nondelegable duty to police the limits of federal jurisdiction with meticulous care[.]" *Market St. Assocs. Ltd. P'ship v. Frey,* 941 F.2d 588, 590 (7th Cir. 1991).  In *Int'l Marine,* 2016 WL 11431679 at *3,* the Court held "a federal district court *should not accept the removal* of a savings clause case solely because of its general maritime nature: **the maritime nature simply does not provide a ground for federal jurisdiction,"** *quoting Armstrong v. Alabama Power Co.,* 667 F.2d 1385, 1388 (11th Cir. 1982) (emphasis added; emphasis in bold in original). In *Sanders v. Cambrian Consultants (CC) of America, Inc.,* 132 F. Supp. 3d 853, 858 (S.D. Tex. 2015), the Court held that "when a maritime claim is filed in state court under the Savings to Suitors clause, it is transformed into a case *at law*, as opposed to admiralty. The federal district courts thus do not have original jurisdiction…" Therefore, there are no admiralty claims properly before this Court for diversity jurisdiction to "save."

Second, defendant's removal of plaintiff's action based upon diversity was itself barred by the forum defendant rule and cannot provide an independent basis for removal of the non-removable alleged admiralty claims. In *Int'l Marine,* 2016 WL 11431679*,* the Court considered and rejected the very argument made by defendant here, *i.e.*, that defendant's removal on the basis of admiralty was proper because there is another independent basis for jurisdiction, diversity of citizenship, and called it "misguided." The Court held that "to accept Defendant's argument would mean to 'permit the very occurrence the Supreme Court attempted to avoid in *Romero*-the evisceration of the savings clause.'" *citing Cassidy v. Murray,* 34 F. Supp. 3d 579, 583 (D. Md.

12

2014) and *Romero,* 358 U.S. at 371-72. In *Sanders,* 132 F. Supp. 3d 853*,* n.3, the Court held that "since the court may not exercise original jurisdiction of the claim in admiralty, since it was first filed in state court, the only way it could exercise jurisdiction over the case is pursuant to [the diversity statute]," but that removal was barred by the forum defendant rule.

Defendant argues that the forum defendant rule is procedural and that diversity still provides federal jurisdiction. However, that argument is not relevant as a defendant seeking removal of a non-removable admiralty claim must prove an independent basis for removal, not merely an independent basis for jurisdiction. In *Lu Junhong,* 792 F.3d at 817, the Seventh Circuit referred to several decisions which, *citing Romero,* held that "plaintiffs who elect to litigate a common-law maritime claim in state court are entitled to keep their preferred forum, when the defendant is a citizen of the forum state, unless some other jurisdictional grant also applies *and permits removal.*" (emphasis added). *See also Edmonton v. Magnolia Marine Transport Co.,* 359 F.3d 1237, 1241 (10th Cir. 2004) (savings clause precludes removal of maritime actions brought in state court "provided there is no independent basis *for removal*") (emphasis added, internal quotations omitted). *Glazer v. Honeywell, Int'l, Inc.,* 2017 1943953, at \*3 (D. N.J. 2017("plaintiffs who elect to litigate a common-law maritime claim in state court are entitled to keep their preferred forum, *when the defendant is a citizen of the forum state,* unless some other jurisdictional grant also applies *and permits removal," citing Lu Junhong*) (emphasis added).

Defendant cites only one case, *Curry,* 2021 WL 1088325*,* in support of its unusual argument and *Curry,* in turn, only relies upon one decision, *Brown,* 149 F. Supp. 3d 963. However, the Court in *Brown* held that admiralty claims are not removable, even after the amendment to the removal statute, and remanded that action. The forum defendant rule was not at issue in *Brown.*

As stated, defendant also makes the converse argument that its removal on the basis of diversity is not barred by the forum defendant rule because admiralty provides an independent basis for jurisdiction and the forum defendant rule in the removal statute only applies to diversity actions and not to admiralty claims. Again, the bar to removal of admiralty claims is the saving-to-suitors clause, 28 U.S.C. § 1333; *Romero,* 358 U.S. 354*,* not the removal statute. *Boakye,* 295 F. Supp. 3d 1342 (cited by defendant); *Int'l Marine,* 2016 WL 11431679*.* Plaintiff is not contending that the forum defendant rule bars removal of any admiralty claim by plaintiff. Rather, defendant cannot remove plaintiff's claims on the basis of admiralty jurisdiction. Any admiralty claim by plaintiff is not properly before this Court and cannot provide an independent basis for defendant's removal on diversity grounds.

All of the courts, with the lone exception of *Curry,* 2021 WL 1088325, which have considered defendant's argument have rejected it. In *Speranza,* 925 F. Supp. 2d 266*,* the Court remanded plaintiff's wrongful death action upon finding that the action was not removable under admiralty law *and* removal on the basis of diversity of citizenship was barred by the forum defendant rule. The Court did not allow defendant to combine two improper bases for removal to create a basis for removal. In *Sanders,* 132 F. Supp. 3d 853*,* the Court remanded maritime claims upon finding that the claims were not removable under the saving-to-suitors clause and further found that there could be no removal under the diversity statute due to the presence of a forum defendant. Again, there was no discussion of combining two improper bases for removal to create a basis for removal.

In *Int'l Marine,* 2016 WL 11431679*,* at *4, the Court remanded the action after first holding that removal on the basis of diversity was barred by the forum defendant rule. The Court then, as discussed, roundly rejected defendant's argument that removal of the action was not precluded by

14

the forum defendant rule because that rule only applies to diversity claims and there were admiralty claims present in the action. The Court called that argument "misguided" and held that "to accept Defendant's argument would mean to 'permit the very occurrence the Supreme Court attempted to avoid in *Romero*-the evisceration of the savings clause." In *Barglowski v. Nealco Int'l, LLC,* 2016 WL 5107043 (D. Hawaii 2016), the Court remanded plaintiff's personal injury action upon first finding that the action was not removable based on diversity because of the forum defendant rule and then holding that the maritime claims were not removable. The Court did not consider a combination of these two non-removable claims to somehow create a basis for removal.

## CONCLUSION

The Court's decision on this motion has far-reaching implications. If there is admiralty jurisdiction over this crash of an aircraft on a domestic flight, where the wrong occurred over land and there was no possibility of a potential disruptive impact on maritime commerce, this defendant will seek to expand admiralty jurisdiction to every crash occurring outside the continental U.S. where at least part of the flight was over some body of water. Further, if this defendant is allowed to remove this action by piecing together two clearly improper bases for removal standing alone, all admiralty cases will be freely removable, contrary to the saving-to-suitors clause and the Supreme Court's decision in *Romero,* 358 U.S. 354*,* and the forum defendant rule will have no application in actions removed as admiralty claims. Plaintiff submits that the limited jurisdiction of federal courts, *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986),  the right of a plaintiff to his choice of a state court forum, *Doe,* 985 F.2d 908, the strict construction of the removal statute, *Jones,* 541 F.2d 660, and the "strong presumption in favor of remand," *Fuller v. BNSF Ry. Co.,* 472 F.Supp.2d 1088, 1091 (S.D. Ill. 2007), require the remand of this action.

Dated:  June 7, 2021                                 WISNER LAW FIRM, P.C.


                                                     By:_____/s/Floyd A. Wisner_____
                                                         One of the Attorneys For Plaintiffs

## CERTIFICATE OF SERVICE

Floyd A. Wisner, an attorney, certifies that he served Plaintiff's Reply Memorandum in Further Support of Motion To Remand upon all counsel of record via CM/ECF on June 7, 2021.

/s/Floyd A. Wisner

Floyd A. Wisner
IL Bar #3048713
Alexandra M. Wisner
IL Bar #6317572
Wisner Law Firm, P.C.
514 W. State Street
Suite 200
Geneva, Illinois 60134
(630) 262-9434
(630) 262-1066 (fax)
faw@wisner-law.com
awisner@wisner-law.com